PEOPLE v GREGORCZYK

Docket No. 101050. Submitted March 1, 1988, at Lansing. Decided July 5, 1989. Leave to appeal applied for.

Robert A. Gregorczyk was convicted in 1983 of delivery of more than 50 grams but less than 225 grams of cocaine following a bench trial in Genesee Circuit Court, Harry A. McAra, J. Despite the fact that the statute at that time provided that one convicted of that crime was to be sentenced to either life probation or a prison term with a minimum term of at least ten years and a maximum sentence of twenty years, Judge McAra sentenced defendant to a prison term of from five to twenty years. Defendant appealed. The Court of Appeals affirmed the conviction but remanded for resentencing in accordance with statutory mandate. Unpublished opinion per curiam of the Court of Appeals, decided March 25, 1986 (Docket No. 71995). Following a denial of his motion for rehearing, defendant sought leave to appeal to the Supreme Court. During the pendency of the application for leave to appeal, the parole board, in October, 1986, granted defendant an early discharge from his sentence. The Supreme Court denied leave to appeal and subsequently denied defendant's motion for reconsideration without prejudice to defendant's raising in the trial court claims relating to his resentencing. 426 Mich 881 (1986). The successor trial court, Valdemar L. Washington, J., sentenced defendant to life probation. Defendant appealed.

The Court of Appeals *held:*

1. The record contains no evidence that the sentence of the judge on resentencing was the product of vindictiveness or retaliation because defendant had appealed his conviction and sentence.

2. Lifetime probation does not constitute cruel or unusual punishment.

3. Since under the new sentence of life probation it would be impossible for defendant to receive credit for the time he had

REFERENCES

Am Jur 2d, Criminal Law §§ 547, 581-583.

Power of court to increase severity of unlawful sentence—modern status. 28 ALR4th 147.

already served, the new sentence of life probation constitutes a new and separate sentence for the same crime and thus is violative of the constitutional prohibition against multiple punishments for the same crime.

4. A statutorily valid sentence of from ten to twenty years would also have been constitutionally invalid under these circumstances where the parole board has granted defendant an absolute release from the original invalid sentence even though such release was in violation of the statutory provision prohibiting parole of one convicted of this crime until that person had served the minimum sentence imposed by the sentencing court.

Sentence is vacated and defendant is discharged.

SAWYER, P.J., dissented. He would hold that imposing a valid sentence in place of a prior invalid sentence does not constitute double jeopardy and that the unlawful action of the parole board could not affect the ability of the court to impose a statutorily valid sentence. He would affirm.

1. CRIMINAL LAW — SENTENCING.

An invalid sentence may be set aside and a valid one imposed, subject to the defendant's right to receive credit for any time served on the invalid sentence.

2. CRIMINAL LAW — SENTENCING — RESENTENCING — CONSTITUTIONAL LAW — MULTIPLE PUNISHMENTS.

It is a violation of the constitutional prohibition against multiple punishments for the same offense to impose a sentence of life probation following a remand for resentencing by the Court of Appeals where the original invalid sentence was for a term of years, since it is impossible to fully credit against the new sentence the time served pursuant to the prior invalid sentence.

3. CRIMINAL LAW — SENTENCING — RESENTENCING — DEPARTMENT OF CORRECTIONS — DISCHARGE FROM SENTENCE.

It is a denial of due process for a trial court, pursuant to an order of the Court of Appeals remanding for resentencing, to impose a new sentence where, during the pendency of appellate review, the Department of Corrections granted an absolute discharge to the defendant from the prior invalid sentence, even where the order of discharge by the Department of Corrections was contrary to a statutory mandate with respect to the minimum sentence which must be served.

*Frank J. Kelley*, Attorney General, *Louis J.*

*Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Mark Sanford,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett),* for defendant.

Before: SAWYER, P.J., and MICHAEL J. KELLY and J. J. RASHID,* JJ.

J. J. RASHID, J. This is a case of first impression in Michigan by virtue of the unique factual situation it presents. On January 23, 1983, defendant was convicted of delivery of more than 50 grams but less than 225 grams of cocaine, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). At the time, the statute required that defendant be either imprisoned for not less than ten years nor more than twenty years or placed on probation for life.[1]

On May 25, 1983, defendant was sentenced to prison for a term of from five to twenty years. Defendant then appealed his conviction and sentence, claiming in part that this sentence was too severe. In an unpublished per curiam opinion, this Court affirmed defendant's conviction but remanded for resentencing consistent with MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii) stating: "If defendant is not placed on probation for life, MCL 769.9(3); MSA 28.1081(3) requires a minimum sentence of ten years imprisonment." Defendant's petition for rehearing in this Court and application for leave to appeal to our Supreme Court were denied.

On October 24, 1986, while defendant's applica-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The statute has since been amended and now calls for a minimum of five years and a maximum of twenty years or life probation.

tion for leave to appeal to the Supreme Court was pending, the Parole Board granted defendant an early discharge from his original sentence. On March 4, 1987, the Supreme Court denied defendant's motion for reconsideration, "without prejudice to the defendant's raising the claims, among others of double jeopardy and due process violations to a 'resentence' of the defendant after being discharged by the Department of Corrections."

On March 5, 1987, defendant was sentenced by a successor circuit court judge to probation for life. Defendant now appeals as of right from his resentencing.

The first claim by defendant is that the trial court lacked jurisdiction to resentence him. The first sentence imposed on the defendant was invalid because the minimum prison term of five years was obviously less than the statutorily prescribed minimum of ten years. MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). It is well-established that an invalid sentence may be set aside and a valid one imposed, subject to the defendant's right to receive credit for any time served on the invalid sentence. *People v Wilson,* 111 Mich App 770; 315 NW2d 423 (1981). The trial court had jurisdiction to resentence defendant.

Defendant also claims that his resentencing was a violation of due process because it improperly punished him for having appealed his original conviction and sentence. There is nothing in the record below which supports defendant's claim in this regard. To the contrary, the trial judge was sympathetic to defendant's predicament, calling it "an unfortunate case," and noting the mandatory sentencing provisions of the statute, as well as defendant's exemplary record. The court was faced with two sentencing choices under the statute: life probation or a prison term of from ten to twenty

years. It is certainly arguable that life probation is the less severe of the two available options. In short, there is no evidence that the trial court's second sentence was based on vindictiveness or retaliation. See *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

We also reject defendant's argument that lifetime probation constitutes cruel and unusual punishment. See *People v Campbell,* 115 Mich App 369; 320 NW2d 381 (1982), lv den 417 Mich 879 (1983); *People v Tanksley,* 103 Mich App 268; 303 NW2d 200 (1981).

The defendant's claims regarding double jeopardy and other due process violations require a more detailed analysis of the facts and legal issues involved. It should be emphasized that the fact distinguishing this case from others reported is that, at the time of his resentencing, defendant had already received a discharge from his original sentence by the parole board.

Defendant relies on *North Carolina v Pearce, supra,* to support his double jeopardy claim. A review of that case reveals that the facts are distinguishable from those presented here and that the primary legal issues concerned a defendant's right to appeal without the fear of being punished for doing so. This aspect of *Pearce, supra,* was further clarified in *Wasman v United States,* 468 US 559; 104 S Ct 3217; 82 L Ed 2d 424 (1984). However, some basic legal principles set forth in *Pearce, supra,* have application here. The United States Supreme Court held that the Fifth Amendment guarantee against double jeopardy, enforceable against the states through the Fourteenth Amendment, "protects against multiple punishment for the same offense." *Pearce, supra,* p 717. Quoting from *Ex parte Lange,* 85 US (18 Wall)

163, 168, 173; 21 L Ed 872 (1874), the Court went on to say:

> "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And . . . there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts for the same statutory offense.
>
> ". . . [T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it." [Citation omitted.]

We think it is clear that this basic constitutional guarantee is violated when punishment already exacted for an offense is not fully "credited" in imposing sentence upon a new conviction for the same offense. The constitutional violation is flagrantly apparent in a case involving the imposition of a maximum sentence after reconviction. Suppose, for example, in a jurisdiction where the maximum allowable sentence for larceny is 10 years' imprisonment, a man succeeds in getting his larceny conviction set aside after serving three years in prison. If, upon reconviction, he is given a 10 year sentence, then, quite clearly, he will have received multiple punishments for the same offense. For he will have been compelled to serve separate prison terms of three years and 10 years, although the maximum single punishment for the offense is 10 years' imprisonment. *Though not so dramatically evident, the same principle obviously holds true whenever punishment already endured is not fully subtracted from any new sentence imposed.*

We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully, "credited" in imposing sentence upon a new conviction for the same offense. If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can

be returned to him. But if he is reconvicted, those
years can and must be returned—by subtracting
them from whatever new sentence is imposed. [395
US 717-719, emphasis added.]

This principle was followed by our Supreme
Court in *People v Sturdivant*, 412 Mich 92, 96, 97;
312 NW2d 622 (1981). In that case, the defendant
was initially placed on probation with a condition
that the first six months be served in jail. After
finding that defendant violated his probation, he
was sentenced to a prison term without receiving
credit for the six months served as part of his
probation. Citing the last two paragraphs of the
above-quoted section of *Pearce, supra,* the Su-
preme Court said:

We can discern no basis for refusing to apply
this principle to the situation before us, in which
the initial period of incarceration was a condition
of probation rather than a sentence voided by
reversal. To hold otherwise could lead to the
anomalous result of a defendant suffering longer
incarceration as a result of having been placed on
probation than if initially sentenced to the maxi-
mum prison term possible for the offense. [412
Mich 97.]

*Pearce, supra,* applied the protection against
multiple punishment to sentencing after reconvic-
tion. *Sturdivant, supra,* applied the same principle
to probation violators who served time as a condi-
tion of probation. We see no reason not to apply
the principle here, where defendant is compelled
to serve two separate and distinct sentences for
the same offense. This is true even though the first
sentence did not conform to the statute. The non-
conformance does not change the fact that defen-
dant served 3½ years of the 5- to 20-year term

initially imposed, and was fully discharged from that sentence.

The situation here is analogous to the hypothetical posed in the above-quoted section of *Pierce, supra,* pp 718-719 even though the sentence was not occasioned by a reconviction or a probation violation, defendant is still compelled to serve two separate and distinct sentences. He has served 3½ years of this 5- to 20-year term and has been discharged from that sentence. He must now undergo the additional punishment of lifetime probation along with the supervision, conditions and restrictions which accompany that sentence. Although probation, even for life, may be considered less severe than imprisonment, and is generally viewed more as rehabilitative than punitive, it is still a sentence or punishment imposed by the court for violation of the law. The conditions and restrictions attached to probation represent a form of punishment. In addition, a violation of probation could result in a prison term. It is true that, in some situations, a jail or prison term can be a condition of probation. However, in this case, the prison term and probation for life are separate and distinct sentences. The defendant cannot be compelled to serve both as that would result in multiple punishment for the same offense contrary to the Fifth Amendment protection against double jeopardy. *Pearce, supra.*

Under *Pearce,* the constitutional protection against multiple punishments for the same offense "is violated when punishment already exacted for an offense is not fully 'credited' in imposing sentence upon a new conviction for the same offense." The case at bar does not involve a new conviction. However, *Sturdivant, supra,* went beyond new convictions and applied the same principles to probation violations. Further, the *Pearce* Court also

held, "the same principle obviously holds true *whenever* punishment already endured is not fully subtracted from *any new sentence imposed.*" *Pearce, supra,* p 718. (emphasis added). On the narrow facts of this case, it is reasonable to apply the principle that the constitutional protection against multiple punishments for the same offense is violated when punishment already exacted is not fully credited in resentencing.

It is quite clear that there is no way to subtract the years served in prison from the term of life probation imposed. Defendant, in effect, received no credit for the 3½-year prison term he served. Admittedly, he cannot receive such credit toward the term of life probation. The only way to receive the credit would be to impose the mandatory ten- to twenty-year prison term, which we believe would be much less desirable to defendant than lifetime probation. It is apparent that the trial judge shared this belief when he imposed the less severe probationary term. But we must address the facts before us. Those facts indicate that defendant received life probation without any credit for the prison term he served. For the reasons stated, that amounts to multiple punishment for the same offense, contrary to the Fifth Amendment guarantee against double jeopardy.

We recognize it can be argued that application of our reasoning could result in a different conclusion if defendant had been resentenced to ten to twenty years, receiving credit for the time served. However, this would not change the result since any resentencing of defendant after his discharge from his first sentence would result in a denial of due process.

Defendant was discharged from his original sentence by the parole board, by an order entitled, "Parole Board Order for Discharge from Sen-

tence." It is apparent that Gregorczyk's release and discharge was contrary to MCL 333.7401(3); MSA 14.15(7401)(3). Under that section, a person is not eligible for parole until he has served at least the minimum term imposed by the sentencing court. The mandatory minimum in this case is ten years.

The Department of Corrections must be charged with notice of these facts, presumably having access to the defendant's history and file, knowledge of the crime charged and the order imposing sentence. The department must also be charged with knowledge of applicable statutory provisions.

Defendant's release and discharge from parole was an act carried out by the executive branch of state government through the Department of Corrections' Parole Board. His discharge was therefore an exercise of executive powers. The Department of Corrections is required to exercise its discretion to grant paroles or discharges within certain statutory limits. See MCL 791.231 et seq.; MSA 28.2301 et seq. In light of all of this, it is a source of confusion, to say the least, as to why the department released the defendant and discharged him from parole prior to serving even the minimum five years imposed by the trial court.

This Court will not assume that the Department of Corrections acts in an arbitrary fashion. In the absence of facts to the contrary, it is presumed that it satisfied itself that defendant was an appropriate candidate for discharge from parole and was not a threat to the health and safety of the public. There are no claims of fraud, misrepresentation of documents or other irregularities in the process of defendant's discharge, other than the glaring fact that defendant should not have been released prior to serving a minimum of ten years under the statute.

In fact, the record before us does not reveal any of the facts and circumstances surrounding the defendant's discharge, other than the fact of the discharge itself. It appears Gregorczyk was released without any further supervision, conditions or obligation on his part. The record reveals no corrective action taken by the Department of Corrections at any time. The discharge may have been the result of an honest oversight, negligence, economic considerations, overcrowded prisons or more. A determination of that question would be purely speculative given the absence of any supportive facts.

Given this scenario, we must determine the effect of defendant's discharge by the Department of Corrections. Only one reported Michigan case can be found which addressed the definition or effect of an absolute discharge. In *In re Eddinger,* 236 Mich 668, 670; 211 NW 54 (1926), which concerned the Governor's authority to recall or revoke an absolute discharge issued after expiration of the prisoner's parole period, the Court said:

"The purpose of a parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime. It is a conditional release. The condition being that if he makes good he will receive an absolute discharge from the balance of his sentence; but if he does not make good he will be returned to serve his unexpired term. The absolute discharge is something more than a release from parole. It is a remission of the remaining portion of the sentence. Like a pardon, it is a gift from the executive, and like any other gift it does not become effective until it is delivered and accepted. After delivery it cannot be recalled. So in the instant case if there was a delivery and

acceptance of the discharge, it was beyond the power of the governor to revoke it."

In the absence of any facts to the contrary, it appears that defendant received an absolute discharge from the balance of his first sentence on October 24, 1986. This discharge must operate as "a remission of the remaining portion of his sentence," as in *Eddinger, supra.* To impose a new sentence on defendant after being discharged from the first sentence would amount to a revocation or recalling of that discharge. It is axiomatic that the due process guarantee applies with respect to matters relating to sentence and punishment. In this case with the imposition of the second sentence, defendant's absolute discharge has been summarily revoked without due process.

It has also been held that "[t]he test for denial of due process depends in each case upon the facts thereof." *In re Meissner,* 358 Mich 696, 698; 101 NW2d 243 (1960). In this case, due process would require, at a minimum, an inquiry into the facts, circumstances and reasoning surrounding defendant's discharge. There is nothing presented in the record before us sufficient to warrant a recall or revocation of defendant's discharge.

Since the discharge operates as "a remission of the remaining portion of his sentence," *Eddinger, supra,* his obligation to the state has ended. On these limited facts, defendant cannot be compelled to serve an additional sentence.

The order of sentence imposing life probation on defendant is reversed. Defendant is discharged from the term of life probation.

MICHAEL J. KELLY, J., concurred.

SAWYER, P.J. *(dissenting).* I respectfully dissent.

Defendant argues that the trial court was without jurisdiction to resentence him. I disagree.

Once a trial court has imposed a valid sentence, that sentence may not be set aside and a new sentence imposed. *People v Whalen*, 412 Mich 166, 169; 312 NW2d 638 (1981). However, an invalid sentence may be set aside and a valid one imposed, subject to the defendant's right to receive credit for any time served on the invalid sentence. *People v Dorsey*, 107 Mich App 789, 792; 310 NW2d 244 (1981). However, a trial court's authority to resentence depends on the invalidity of the original sentence.

In the instant case, defendant's first sentence was invalid because it fell outside the statutory limitation on the sentencing judge's discretion. The exclusive authority for determining the appropriate length of sentence for each crime is vested in the Legislature. *People v Coles*, 417 Mich 523, 538; 339 NW2d 440 (1983); *In re Callahan*, 348 Mich 77, 80; 81 NW2d 669 (1957). A sentencing court's discretion in imposing a particular sentence is therefore limited to acting within the parameters expressed in the statute. *Coles, supra* at 540, citing *Whalen, supra.*

At the time of defendant's sentencing, the only authorized sentences for a defendant convicted of delivery of more than 50 grams but less than 225 grams of cocaine were a prison term of at least 10 years in length, but less than 20 years, or probation for defendant's lifetime. MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). The Legislature further limited the possibility of altering a defendant's sentence under the statute by precluding defendant's eligibility for parole or suspension of his sentence before the expiration of the mandatory term. MCL 333.7401(3); MSA 14.15(7401)(3). Moreover, should a defendant re-

ceive the alternative, life probation, such probation may be terminated only by revocation and imposition of the minimum prison term. MCL 771.2(3); MSA 28.1132.[1]

Because defendant's original sentence did not conform to the statutory mandate, that sentence was invalid. The trial court thus had jurisdiction to impose the instant sentence as defendant's first valid sentence.

Defendant next contends that, because he was discharged from the original sentence before being resentenced, the new sentence violates defendant's right to protection from double jeopardy. US Const, Ams V, XIV; Const 1963, art 1, § 15. However, substituting a valid sentence for an invalid sentence does not constitute double jeopardy, even if the invalid sentence has been served. *Bozza v United States,* 330 US 160; 67 S Ct 645; 91 L Ed 818 (1947); *In re Pardee,* 327 Mich 13, 18; 41 NW2d 463 (1950); *People v Corlin,* 95 Mich App 740; 291 NW2d 188 (1980). Moreover, pursuant to MCL 333.7401(3); MSA 14.15(7401)(3), defendant was not eligible for parole and was not properly subjected to the jurisdiction of the parole board before serving the minimum sentence imposed. Defendant may not base his claim of double jeopardy on the apparently unlawful actions of the parole board concerning defendant's invalid sentence.

Defendant next argues that the trial court violated his right to due process because it punished him for appealing his conviction by imposing a term of life probation. Assuming, without deciding,

[1] The 1987 amendment to MCL 333.7401(3); MSA 14.15(7401)(3), which is inapplicable here, has altered the sentencing options for a conviction under that provision. The amended statute precludes granting disciplinary credits or "any other type of sentence credit reduction," but also lowers the minimum authorized prison sentence to five years. 1987 PA 275.

that defendant received a harsher sentence, his argument is still without merit.

In a case where the original sentence is invalid, a defendant may not use his original sentence as a guideline for attacking the current, valid sentence. *People v Gauntlett*, 152 Mich App 397, 401-402; 394 NW2d 437 (1986). Additionally, we find no evidence in the record to support a claim that the resentencing court intended to punish defendant for exercising his right to appeal. The resentencing court's comments reflect an appreciation for, and approval of, defendant's exemplary behavior. The court expressed its belief that this was an "unfortunate case." However, because of the original error, and defendant's exercising his right to appeal, he has actually spent less time incarcerated for this offense than if a valid prison sentence had originally been imposed.

Defendant next asserts that his resentencing violates the doctrine of separation of powers, because it interferes with the Governor's power to grant commutations, reprieves or pardons. Const 1963, art 5, § 14.

We do not have before us the parole board's file on defendant. However, it appears that defendant received an early release from his sentence in the form of a discharge from parole. The certificate of discharge does not reflect the Governor's pardon or reprieve. Even if this early discharge were considered to be a commutation by the Governor, I do not believe defendant's resentencing violates the doctrine of separation of powers. This is so because defendant's original sentence was invalid. The constitutional power granted the Governor to commute a defendant's sentence presumes imposition of a valid sentence.

Defendant next argues that life probation constitutes cruel and unusual punishment contrary to

federal and state constitutional protections. I agree with other panels of this Court which have held that life probation does not constitute cruel or unusual punishment. See *People v Campbell,* 115 Mich App 369; 320 NW2d 381 (1982); *People v Tanksley,* 103 Mich App 268; 303 NW2d 200 (1981).

Further, defendant's claim that a sentence to life probation violates the principles of due process and equal protection is without merit. I am not persuaded that no rational relationship exists between a legitimate state interest and the distinction made between crimes for purposes of establishing the permissible length of a probationary term. See *People v Kaigler,* 116 Mich App 567, 570; 323 NW2d 486 (1982).

The legislative scheme regarding punishment for drug offenses evinces a recognition that sale and use of illicit drugs is an extremely serious threat to the well being of the people of this state. With the increasing number of drug-related offenses, the apparent high profit in dealing drugs and the difficulties encountered in enforcing the drug laws, I cannot say that no rational basis exists for differentiating between drug offenses and other offenses for purposes of punishment.

I would affirm.